UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

PAULETTE A. LOVE,

    Plaintiff,                                      Case No. 18-10455
                                                    Honorable Victoria A. Roberts

v.

PROQUEST, LLC,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT [ECF No. 17]

**I.**     **INTRODUCTION**

Plaintiff Paulette Love ("Love") filed this suit against her former employer, ProQuest, LLC ("ProQuest"), alleging ProQuest fired her due to her race and in retaliation for making an internal complaint of discrimination, in violation of Title VII of the Civil Rights Act of 1964. ProQuest moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

For the reasons below, ProQuest's motion for summary judgment is **GRANTED**.

**II.**     **BACKGROUND**

Love worked for ProQuest from September 14, 2015 to January 8, 2016. When Love was hired, the description of her position included, in relevant part, that it "may be appropriate for full or partial remote work, subject to approval." Although Love never received formal approval to work from home on a full or part time basis, her interim manager, Payal Lal ("Lal"), granted Love's specific requests to work from home on four or five occasions.

On November 11, 2015, ProQuest hired Jennifer Albers-Smith ("Albers-Smith") as Love's permanent manager. On November 13, Albers-Smith sent Love an email asking for her schedule.

Love responded that she was "in the office on Mondays and Wednesdays unless there is something scheduled onsite that needs [in person] attention" –implying that she was approved to work from home on Tuesdays, Thursdays, and Fridays. However, there was no formal agreement allowing Love to work from home on a full-time or partial-time basis. Albers-Smith took Love at her word; Love began regularly working from home three days per week.

In early December, while taking inventory of the projects her subordinates were working on, Albers-Smith determined that Love had capacity to take on a new project in comparison to her colleagues; however, when Albers-Smith assigned the project to Love, Love refused it and claimed she had no "bandwidth" for new projects. This concerned Albers-Smith; her review showed that Love was working on fewer projects than the other person in her position and also had much less output than she should have had.

On December 7, 2015, Albers-Smith sent Kendra Fuller ("Fuller"), the Vice President of ProQuest's Human Resources ("HR") Department, an email asking for advice on how to address her concerns about Love's performance. Fuller sent the email to Wendy Treppa ("Treppa") , a Senior HR Business Partner in Ann Arbor, and asked her to contact Albers-Smith to address the issue. Treppa met with Albers-Smith that same day, advising her not to allow Love to work from home three days per week

due to Love's short tenure and performance issues; Treppa also suggested that Albers-Smith provide Love coaching and a list of expectations.

After meeting with Treppa, Albers-Smith met with Love. She discussed performance concerns and informed Love that she would not be able to regularly work from home three days per week any longer. However, Albers-Smith still approved Love's subsequent requests to work from home on specific, individual days. Love disputed the feedback regarding her work performance and told Albers-Smith that she took the ProQuest position because it gave her the flexibility to work remotely.

Immediately after the meeting, Love went to Lisa Spicko ("Spicko"), Albers-Smith's manager, to initiate a complaint; Love told Spicko about the meeting and said she felt Albers-Smith was singling her out and treating her differently than her counterparts, particularly because Albers-Smith criticized Love's performance before Love received clear performance objectives and because she would no longer be able to work from home three days per week. Spicko told Love she would look into her complaint and that she could work from home the following day – December 8.

On December 8, Love reported her complaint to Alex Ralston ("Ralston"), an HR Coordinator. Love told Ralston the same things she told Spicko. Love also complained that: (1) while she had limited interaction with Albers-Smith before the December 7 meeting, Albers-Smith meets regularly with other team members; (2) Albers-Smith allows other team members to select projects to work on, but she assigns them to her; and (3) Love was sitting near a co-worker when Albers-Smith left work two weeks ago, and Albers-Smith said "goodbye" to the co-worker but not to Love. Although she complained of being singled out and treated differently than other team members, Love

admitted during her deposition that she never complained that she was being discriminated against based on her race.

Love's complaint was assigned to Treppa. Treppa investigated the complaint and also continued working with Albers-Smith regarding her concerns about Love's performance.

Also on December 8, Albers-Smith sent Love an email following up their December 7 meeting; she informed Love that: (1) the HR Department and Clay McDaniel ("McDaniel"), Vice President of Marketing, had no records showing Love was approved to work from home three days per week; and (2) Albers-Smith and Treppa would meet with Love on December 10 to discuss any questions Love had regarding working from home or the other items they discussed during their December 7 meeting. Fuller emailed Love on December 9 to confirm that Treppa and Albers-Smith would meet with Love on December 10 to clarify performance expectations; Fuller also told Love that Albers-Smith would write down and share those expectations for clarity.

On the morning of December 10, Spicko sent an email to McDaniel, informing him that Albers-Smith and Treppa were meeting with Love that morning to discuss performance issues and expectations; she also told McDaniel that the meeting would not mark the start of a performance improvement plan.

As planned, Albers-Smith and Treppa met with Love on December 10. They discussed expectations, performance feedback, and steps to improve performance. Albers-Smith or Treppa also asked Love who authorized her schedule to work from home Tuesdays, Thursdays, and Fridays; Love said Lal approved the schedule. Treppa told Love that she would investigate the work from home issue further.

4

On December 11, Albers-Smith sent Love a follow-up email, memorializing their discussion regarding performance expectations and plans to improve.

Albers-Smith also emailed Spicko and McDaniel on December 11, informing them that: (1) Love told her and Treppa during their meeting that Lal approved her work from home schedule; (2) Lal stated verbally and in writing that she did not approve Love's three-day work from home schedule; and (3) Treppa was deciding how to handle Love's false statement. Later that day, Spicko responded that, Treppa "is exploring an option to terminate [Love] early next week on the basis that she lied."

Treppa continued to look into the issue; on or around December 15, she began compiling information to include in a "decision to terminate" memorandum. On December 15, Treppa interviewed Lal about Love's work from home schedule. Lal denied authorizing Love a work from home schedule; she said Love's schedule was in the Ann Arbor office with occasional work from home granted to Love on specific dates she requested.

Treppa finished the decision to terminate memorandum on December 17, 2015. On December 18, Kellie Teal-Guess ("Teal-Guess"), Senior Vice President of Global Human Resources, approved Love's termination. ProQuest waited to terminate Love until she returned from a two-week vacation, on January 8, 2016.

Love filed this case alleging race discrimination and retaliation in February 2018.

ProQuest moves for summary judgment on both of Love's claims. ProQuest's motion is fully briefed.

5

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden to inform the Court of the basis for the motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id*. at 324. Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is the "mere existence of a scintilla of evidence in support of the [non-movant's] position"; the evidence must be such that a reasonable jury could find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

## IV. ANALYSIS

Love's race discrimination and retaliation claims are both analyzed under the burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973). *See Frazier v. USF Holland, Inc.*, 250 Fed. Appx. 142, 145 (6th Cir. 2007);

*Smith v. ACO, Inc.*, 368 F. Supp. 2d 721, 731 (E.D. Mich. 2005). Under this framework, Love first "must present evidence sufficient to establish a prima facie case of [race] discrimination [or retaliation]." *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). If Love satisfies her *prima facie* burden, "the burden of production shifts to [ProQuest] to articulate a legitimate nondiscriminatory reason for the adverse employment action." *Id.* "If [ProQuest] meets this burden, the burden of production shifts back to [Love] to show that [ProQuest's] nondiscriminatory explanation is a mere pretext for . . . discrimination [or retaliation]." *Id.*

### A. ProQuest is Entitled to Summary Judgment on Love's Discrimination Claim

To establish a *prima facie* case of race discrimination based on circumstantial evidence, a plaintiff must show that she: (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position; and (4) was either replaced by a person outside the protected class or treated less favorably than a similarly-situated individual outside the protected class. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002).

ProQuest challenges Love's discrimination claim on many grounds. However, because it is clear that Love fails to establish the fourth element of her *prima facie* case, it is unnecessary to address ProQuest's remaining arguments.

Love attempts to establish the fourth element of her discrimination claim by claiming, generally, that she "was treated differently than her non-African American co-workers." Love falls far short of satisfying her burden.

7

Although a "similarly situated employee" has been defined as someone whose employment situation is "nearly identical" to the plaintiff's situation in "all . . . *relevant* aspects," a "plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated.'" *Ercegovich,* 154 F.3d at 352 (citation omitted). Rather, a plaintiff must only demonstrate that the other employee is similar in the necessary, relevant respects. *Id*. Once a plaintiff identifies a similarly situated employee, the plaintiff can satisfy the fourth element by demonstrating that the similarly situated employee was treated more favorably. *See Clayton*, 281 F.3d at 611.

Love does not even attempt to identify a similarly situated employee. In fact, the only other individual she names under this prong is Albers-Smith – who, as her manager, is clearly not similarly situated in all relevant respects.

ProQuest is entitled to summary judgment on Love's discrimination claim.

### B. ProQuest is Entitled to Summary Judgment on Love's Retaliation Claim

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must establish that: (1) she engaged in activity protected by Title VII; (2) the exercise of her civil rights was known to the defendant; (3) the defendant took an adverse employment action against the plaintiff; and (4) the adverse employment action was causally connected to the protected activity. *Frazier*, 250 Fed. Appx. at 147-48

ProQuest argues that Love's generic complaint of being "singled out" does not constitute protected activity under Title VII, and that Love fails to establish that her termination was causally connected to her complaint. Alternatively, ProQuest contends that it is entitled to summary judgment even if Love establishes a *prima facie* case,

because Love cannot show that its legitimate non-discriminatory reason for firing her is a pretext for unlawful retaliation. The Court agrees.

### i. Love Did Not Engage in Protected Activity

"Title VII does not restrict the manner or means by which an employee may oppose an unlawful employment practice." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015). However, "a vague charge of discrimination" does not constitute protected activity under Title VII. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989).

In order for Love's complaints to be deemed protected activity under Title VII, Love had to go beyond general claims of unequal treatment and specifically complain about race discrimination. *See id.*; *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) ("[I]n order for Fox's comments to [his manager] to be deemed protected activity under the ADEA, Fox must have referenced alleged acts of age discrimination by [defendant].").

However, as ProQuest states, Love only made generic complaints of feeling singled out and treated unequally. Love, admittedly, never specifically complained of race discrimination and never said she thought Albers-Smith treated her differently *because of* her race.

Therefore, Love did not engage in protected activity under Title VII. *See Fox*, 510 F.3d at 591 (where plaintiff complained that "management [was] out to get him" and said he intended to sue the defendant company, the Sixth Circuit held that the plaintiff had not engaged in protected activity because his statements were too vague and he did not mention that he believed management had discriminated against him on the

9

basis of age); *Booker*, 879 F.2d at 1313 (holding that employee's allegation that manager is a racist is not protected activity under Title VII because "the allegation is not that Brown & Williamson is engaging in unlawful employment practice, but that one of its employees has a racial intolerance" and that charge of "ethnocism" – which the Sixth Circuit assumed to mean a general charge of discrimination – is too vague to constitute protected activity); *Willoughby v. Allstate Ins. Co.,* 104 Fed. Appx. 528, 531 (6th Cir. 2004) (rejecting claim that letter sent preceding retaliation constituted protected activity where letter made vague references to unhappiness among Caucasian employees); *Barber v. CSX Distrib. Servs.,* 68 F.3d 694, 701-02 (3d Cir.1995) (holding that plaintiff's letter to Human Resources complaining about unfair treatment *in general* was not protected activity because letter did not specifically complain about age discrimination).

Because Love's complaints were too vague to constitute protected activity, she fails to present sufficient evidence to establish the first element of a retaliation claim.

### ii. **Love Fails to Establish a Causal Connection**

Love also fails to present sufficient evidence that would permit a reasonable jury to conclude that ProQuest's decision to fire her was causally linked to her alleged protected activity.

"To establish the requisite causal connection, a plaintiff must proffer evidence sufficient to raise the inference that . . . her protected activity was the likely reason for the adverse action." *Frazier*, 250 Fed. Appx. at 148 (citations and internal quotation marks omitted). *See also Smith*, 368 F. Supp. 2d at 732 ("The 'causal link' between the protected activity and adverse employment action is demonstrated by showing that the employer would not have taken the adverse action 'but for' the employee's protected

activity."). A plaintiff must "put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Frazier*, 250 Fed. Appx. at 148. "Proof of temporal proximity between the protected activity and the adverse employment action, coupled with other indicia of retaliatory conduct, may give rise to a finding of a causal connection." *Id.* (citations and internal quotation marks omitted). Typically, "temporal proximity alone is [not] enough to satisfy the causal element." *Smith*, 368 F. Supp. 2d at 732 (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000)).

ProQuest argues that there is no evidence of a causal connection between Love's complaint and her termination. ProQuest says that because Albers-Smith raised concerns regarding Love's performance and told Love she may temporarily lose the ability to work from home *before* Love filed her complaint, Love knew she was not performing up to expectations and she further knew management would learn she was not authorized to work from home three days per week. ProQuest contends that Love cannot immunize herself from legitimate business action by engaging in purported protected activity after, or just before, ProQuest takes action. Moreover, it argues that an employer "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *See Reynolds v. Fed. Exp. Corp.*, 544 Fed. Appx. 611, 615 (6th Cir. 2013) (citations omitted).

Love fails to respond to ProQuest's causation arguments; her response brief does not even contain a section on causal connection.

Love's response to ProQuest's pretext argument does contain some relevant discussion regarding causation; however, she fails to present sufficient evidence that

11

would allow a reasonable juror to find that ProQuest would not have terminated her employment but for her complaint.

Other than her reliance on temporal proximity, Love sets forth nothing beyond self-serving speculation – and arguments that attempt to undermine ProQuest's legitimate, non-discriminatory reason for terminating her, which go toward pretext. Moreover, Love fails to acknowledge that the actions which led to her termination – i.e., the concern regarding her work performance, meeting regarding the same, and inquiry into whether Love was approved to work from home three days per week – were initiated before her complaint, weakening the relevance of temporal proximity. Because Love does not present "other indicia of retaliatory conduct" giving rise to a finding of a causal connection, she fails to create an inference that her "protected activity was the likely reason for the adverse action." *See Frazier*, 250 Fed. Appx. at 149.

Love fails to establish a material question of fact regarding a causal connection between her complaint and ProQuest's decision to terminate her employment.

### iii. Love Fails to Rebut ProQuest's Legitimate Non-Discriminatory Reasons for Her Termination

Finally, ProQuest argues that even if Love could establish a *prima facie* case of retaliation, summary judgment is still warranted because ProQuest proffered legitimate non-discriminatory reasons to terminate Love: (1) she lied about having a work from home schedule; (2) she admitted that while working from home she was attending to the personal care needs of her family; (3) she confronted a client about performance feedback and acted unprofessionally with Albers-Smith; and (4) her work performance was unsatisfactory.

ProQuest satisfied its burden of production. The burden was then on Love to present evidence upon which a reasonable jury could conclude that ProQuest's articulated reasons were pretextual; if she fails to do so, summary judgment is proper. *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 373 (6th Cir. 1999).

A plaintiff can demonstrate pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (citation omitted).

The first type of showing "consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are 'factually false.'" *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (citation omitted), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

Under the second showing, after "admit[ting] the factual basis underlying the employer's proffered explanation and further admit[ting] that such conduct *could* motivate dismissal," the plaintiff "attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." *Id.* (emphasis in original). To make such a showing, a plaintiff "may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence of . . . discrimination." *Id.*

The third showing "ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct substantially identical to that which the employer contends motivated its discharge of the plaintiff." *Id.*

Love attempts to establish that ProQuest's proffered reasons for firing her were pretextual by stating that: (1) she never told Albers-Smith she was approved to work from home on a continuing schedule; (2) she never confronted a client about performance feedback; (3) other employees, including Albers-Smith, were allowed to work from home for the purpose of taking care of personal needs; and (4) the decision to terminate her was made a mere five days after she filed her complaint.

Love does not go beyond making these broad statements; she fails to show, much less argue, how or why these claims establish that ProQuest's proffered reasons for termination were pretextual. Based on this, alone, Love fails to raise a genuine issue of material fact as to pretext. Love's statements also fail to establish pretext when analyzed further.

Love's first statements fall under the first way to establish pretext – i.e., by showing that the proffered bases for her discharge never actually happened. Even if the Court ignores Love's email to Albers-Smith that her schedule was to work from home Tuesdays, Thursdays, and Fridays – which clearly implies that she was approved to work from home three days per week – and accepts as true Love's statement that she never told Albers-Smith she was approved to work from home, she does not establish pretext.

"A plaintiff must allege more than a dispute over the facts upon which her discharge was based in order to establish pretext. . . .She must put forth evidence that demonstrates the employer did not 'honestly believe' in the proffered nondiscriminatory reason for its adverse employment action." *Tribble v. Cincinnati Bell Tel.*, No. 1:09-CV-568, 2011 WL 3627402, at *7 (S.D. Ohio May 4, 2011) (citing *Braithwaite v. Timken Co.*,

258 F.3d 488, 493-94 (6th Cir. 2001)). Love does not claim that ProQuest – or Treppa, the person who made the decision to terminate Love – did not honestly believe in the non-discriminatory reason for termination, which undermines her attempt to demonstrate pretext. Moreover, even if Love did make the argument, it would fail because ProQuest's HR Department conducted an investigation into the matter and no evidence exists "indicating that the process ProQuest used to conduct the investigation was irregular or idiosyncratic." *Allen*, 545 F.3d at 398-99.

The same deficiencies are true for Love's second statement – which also attempts to demonstrate pretext by showing ProQuest's reason has no basis in fact.

Love's third statement – i.e., that other employees were allowed to work from home for the purpose of taking care of personal needs – is unhelpful to her. Love does identify Albers-Smith by name in her brief, and she identifies three other in Exhibit P. However, Love mentions all in conclusory fashion and fails to identify any employees who, like her: (1) worked from home three days per week without approval; (2) lied about having a work from home schedule; and (3) had issues with the quality and consistency of her work performance. *See Manzer*, 29 F.3d at 1084; *Smith*, 368 F. Supp. 2d at 739-40 (finding that plaintiff failed to sufficiently demonstrate pretext because he "identified no other store manager who has engaged *in all of the conduct* cited by Defendant") (emphasis in original).

Love's last statement – that she was fired within five days of complaining – also does not establish pretext. As stated above, temporal proximity by itself is rarely enough to establish causation. *See, supra*, *Smith*, 368 F. Supp. 2d at 732. *See also Booker*, 879 F.2d at 1314 ("However, the mere fact that an adverse employment

15

decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim.").

During the five days between Love's complaint and the decision to fire her, Treppa discovered that Lal did not give Love approval to work from home three days per week. Treppa also conducted her investigation. "In light of the intervening events occurring subsequent to [Love's complaint], the mere fact that [her] discharge occurred after a claim of discrimination is, in and of itself, insufficient to avoid summary judgment." *See Booker*, 879 F.2d at 1314.

Love fails to present sufficient evidence for a jury to conclude that ProQuest's legitimate non-discriminatory reasons for terminating her were pretextual.

## V. CONCLUSION

For the reasons above, the Court **GRANTS** ProQuest's motion for summary judgment

**IT IS ORDERED**.

                                                  S/ Victoria A. Roberts
                                                  Victoria A. Roberts
                                                  United States District Judge

Dated: February 20, 2019